IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| KYLA SHIPPING CO., | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 09-00765-CB-N |
| SHANGHAI ZHENHUA HEAVY INDUSTRY CO., LTD, et al. | ) |
| | ) |
| Defendants. | |

### ORDER

This matter is before the Court on a motion to dismiss filed by the Defendants, Shanghai Zhenhua Port Machinery (Hong Kong) Co., Ltd. , f.k.a Shanghai Zhenhua Heavy Industry (Hong Kong) Co., Ltd., Shanghai Zhenhua Port Machinery (Hong Kong) Co., Ltd., Shanghai Zhenhua Heavy Industry, Shanghai Zhenhua Shipping co., Ltd and Zhen Hua 27 Shipping (Hong Kong) Co., Ltd. (collectively "Zhenhua" or "Defendants"). (Doc. 39.) After a lengthy stay of proceedings granted at the joint request of the parties, Plaintiff Kyla Shipping Co. filed a response in opposition to the motion. (Doc. 62.) The Defendants have filed a reply brief. (Doc. 67.) After due consideration of the issues raised, the underlying facts and the applicable law, the Court finds that this action is due to be dismissed based on the doctrine of *forum non conveniens*.

### Background

*Two Ships Collide—Port of Santos, Brazil, May 4, 2009*

The dispute arises from an incident that occurred on May 4, 2009 in the Port of Santos, Brazil when the M/V ZHEN HUA 27[1] collided with the M/V KYLA, owned by Plaintiff Kyla Shipping Co. The M/V ZHEN HUA 27 is a Hong Kong-flagged vessel. It is owned by Zhen Hua 27 Shipping, a Hong Kong company, and managed by Zhenhua Shipping, a Chinese company. The M/V KYLA is a Liberian-flagged vessel. It is owned by Kyla Shipping Co., a Greek company headquartered in Liberia.

The accident occurred when the M/V KYLA was berthed alongside the TGG Terminal, loading a cargo of bulk soybeans and also loading fuel from a barge alongside the M/V KYLA. The M/V ZHEN HUA 27 entered the harbor carrying large container cranes for delivery in Santos and moored at the TECON terminal. Within an hour after the M/V ZHEN HUA 27 entered the harbor, a thunderstorm moved in. During the storm, the M/V ZHEN HUA 27's mooring lines broke, and the ship allided with the TGG terminal, then collided with the M/V KYLA, and finally allided with the TECON Terminal. After the incident, both Zhenhua and Kyla issued letters of undertaking to various parties for damages related to cargo and to the terminals. These letters provided that the matters would be litigated in Brazilian courts in accordance with Brazilian law.

*Brazilian Maritime Investigation*

Under Brazilian law, the Admiralty Tribunal (also referred to as the Maritime Court) investigates and adjudges facts and issues related to maritime accidents. The Admiralty Tribunal is an independent body whose findings can be used as evidence in civil court, but it does not

---

[1] The vessel seized in this district, the M/V ZHEN HUA 25, and the vessel involved in the collision in Brazil, the M/V ZHEN HUA 27, have similar names but are not the same vessel. The complaint alleges that the two have the same beneficial owner, albeit through a tangled web of interrelated corporations.

adjudicate civil liability.  (Sampaio Decl. ¶ 18; Siano Decl. I ¶ ¶ 26-43.) Its findings are accorded weight but are not necessarily determinative of any issue in a civil trial. On March 29, 2010, the Port Captain concluded the initial investigation into the accident and issued a 20-page report in conjunction with the Admiralty Tribunal.  After interviewing numerous witnesses (at least seven of whom were Brazilians employed at the port) and reviewing security camera footage of the event, the Port Captain determined that "[the] collision between vessels, and the collisions with the terminals, arose from a natural phenomenon of an exceptional character, or rather tied to an abrupt alteration of unforeseeable, logical meteorological conditions; and which became irresistible. . . [i.e.] a 'fortune of the sea', fortuitous case or 'act of God'." (Ex. A, Siano Decl., 41.)  The TGG terminal and others representing cargo interests have challenged those findings in the Admiralty Tribunal, and those proceedings are ongoing.[2]  (Siano Decl. II, Doc. 68, ¶ 7.)

   *Procedural Fencing--International Style*

   Because Kyla was threatening to attach Zhenhua's assets in other jurisdiction, Zhenhua made a preemptive strike.  On October 2, 2009, Zhenhua filed a declaratory lawsuit in the 11th Civil Court for the District of Santos, Sao Paulo, Brazil, seeking a declaration that it is not liable to Kyla because the collision was the result of unforeseen heavy weather.  Kyla subsequently filed a defense to that action, although it "reserved the right not to submit to the jurisdiction of the Brazilian courts."  (Sampaio Decl., Doc. 62-1, ¶ 7.)  If Kyla had failed to defend the lawsuit,

---

[2] In response, Zhenhua filed a counterclaim in that court, "asserting that in the event the [Tribunal] determines that there was no force majeure event that caused the collision, TGG and Kyla were solely responsible therefor."  *Id.*   Zhenhua has also presented a private charge against Kyla to the Tribunal which was accepted on June 7, 2011.

it would have run the risk of having a default judgment entered against it and all facts alleged by Zhenhua would have been accepted as true and correct. (*Id.* ¶ 8.)

On November 19, 2009, Plaintiff Kyla Shipping Co. ("Kyla") filed the instant in personam action against the Zhenhua Defendants. In addition, "[b]ecause Defendants cannot be found within this District" Kyla sought a writ of attachment against the M/V ZHEN HUA 25 pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims. (Compl., Doc. 1, 9.) A warrant of arrest was issued and the M/V ZHEN HUA 25 was seized by the United States Marshal for the Southern District of Alabama. On December 9, 2009, by agreement of the parties, the Defendants posted bond, and the M/V ZHEN HUA 25 was released. (Doc. 25.) As far as the Court is aware, none of the parties have any connection with this district other than the fortuitous seizure of the M/V ZHEN HUA 25.

In this action, Plaintiff alleges that the damage to the M/V KYLA was the result of "the willful and reckless sole fault, neglect, and want of due care of the M/V ZHEN HUA 27 and those in charge of her, and were within privity or knowledge of defendants." The alleged willful, reckless, negligent or careless conduct included the following:

(1) The ZHEN HUA 27 was unseaworthy

(2) The ZHEN HUA 27 was manned by persons who were careless and incompetent and inattentive to their duties;

(3) The ZHEN HUA 27 failed to maintain a proper watch;

(4) The ZHEN HUA 27 failed to keep a proper lookout under the circumstances, visually, by radar, or otherwise;

(5) The ZHEN HUA 27 dismissed the pilot and assisting tugs in advance of inclement weather;

(6) In view of the fact that ZHEN HUA 27 was carrying large post-panamax container cranes for discharge in Santos[,] her crew. . . should have [ ] call[ed] back the tugs that they had wrongly dismissed and instruct[ed] those tugs to assist with holding the vessel on the berth during the thunderstorm;

(8) The ZHEN HUA 27 should not have attempted to come pierside so quickly in advance of inclement weather;

(9) Those in charge of the ZHEN HUA 27 disregarded basic principles of good seamanship;

(10) The ZHEN HUA 27 failed to use due care under the circumstances; and

(11) The ZHAN HUA 27 negligently failed to take timely precautionary or corrective actions to avoid the aforesaid collision and/or to minimize its destructive effect in the face of inclement weather.

(Compl., Doc. 1, 7-8.)  Kyla seeks to recover for the damage to the M/V KYLA, for loss of use and loss of hire of the vessel and for business interruption.  (*Id.* 8-9.) In addition, Kyla seeks "other damages" including damages for claims against it by TGG, local shippers and cargo interests. (*Id.*)

### *The Brazilian Court System*

Kyla could bring its claims against Zhenhua in Brazilian civil court, though the parties disagree as to whether Kyla must file a new action or whether a counterclaim in the declaratory judgment would be permitted.  If a new lawsuit is filed, "Kyla [as a foreign company with no assets in Brazil] would be required to provide security in the amount of up to 25% of its claim in the form of a cash deposit with the court or bank guaranty, since Brazilian courts do not recognize Protection & Indemnity Club letters as valid security absent agreement of the parties." (Sampaio Decl., Doc. 62-1, ¶ 27.)  The parties also disagree over the amount of time it would take to litigate these claims in a Brazilian court.  Kyla, pointing to the declaration of its Brazilian counsel, estimates that it would take as long as 10 to 12 years for a final decision.  (*Id.* ¶¶ 21-22.)  Zhenhua counters, by declaration of its Brazilian counsel, that a more reasonable estimate is 5 to 7 years.  (Siano Decl. II, Doc. 68, ¶ 5.)  Moreover, Zhenhua points out that Kyla's estimate fails to take into account two important factors.  First, the Admiralty Tribunal proceedings are parallel to the civil proceedings; therefore, the time estimate for those proceedings should not be

counted.[3]  Second, the Superior Court of Justice (the equivalent of our Supreme Court) accepts only ten percent of the appeals presented to it, making the likelihood of review by that court remote.  If the Admiralty Tribunal and Superior Court time frames are discounted, the estimate of Kyla's expert is reduced to 7 to 9 years.  (*See* Sampaio Decl. ¶ 22.)

### *Brazilian Maritime Law*

If this claim is litigated in Brazil, Brazilian courts will apply Brazilian law.  However, whether Brazilian courts, applying that country's law, would recognize a shipowner's right to limit liability remains to be seen.  Brazil was a signatory to the International Convention for the Unification of Certain Rules Relating to the Limitation of the Liability of Owners of Seagoing Vessels, signed at Brussels, August 25, 1924 ("the Brussels Convention").  Brazilian maritime law incorporates the limitation of liability provision set forth in the Brussels Convention.  In 2002, Brazil adopted a new civil code which requires a claimant be receive full compensation for damages.  The new law has given rise to an argument, as yet unresolved, that Brazil no longer recognizes a shipowner's right to limit liability.  (Sampaio Decl. ¶¶ 25-26.)

### *Witnesses and Evidence*

The witnesses in this matter are primarily of three nationalities. The crewmen who were on board the M/V KYLA are Filipino.  The crewmen who were on board the M/V ZHEN HUA 27 are Chinese.  The port employees who witnessed the accident, as well as those who investigated it, are Brazilian.  More than 4,000 pages of court documents, in Portuguese, are located exclusively in Brazil and can only be copied during the hours court is open for business.  (Siano Decl. II ¶ 21.) Numerous documents from the vessels and the Terminals, along with

---

[3] In any event, the Admiralty Tribunal (an estimated 4- to 5-year proceeding) is under way and already into its third year.

witness statements and various other relevant documents are located in Brazil. (*Id.* ¶¶ 22-29.) Furthermore, a DVD of recordings of the incident made by the terminal security cameras is in Brazil. (*Id.* ¶ 24.) Finally, the voice data recording from the ZHEN HUA 27 is currently in the exclusive custody of the Admiralty Tribunal, and no procedures have been established by which it can be removed. (*Id.* ¶ 31.)

## Legal Analysis

The issue presented is whether this action should be dismissed based on *forum non conveniens*,[4] a doctrine that recognizes a court's inherent "power to decline jurisdiction in exceptional circumstances." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504 (1947).  Zhenhua contends that the Southern District of Alabama is not the appropriate forum primarily because the accident occurred Brazil whose courts have jurisdiction and are better equipped to apply Brazilian law.  Further, Zhenhua points out that much of the evidence and some of the witnesses are located in Brazil, while no evidence and no witnesses are located in this district (or even in the United States).  In response, Kyla argues that its choice of forum is entitled to deference and that the factors cited by Zhenhua are insufficient to overcome that deference.  To further counter Zhenhua's argument, Kyla asserts that the evidence and witnesses are as accessible in the United States are they are in Brazil, that this Court is capable of applying international law, and that Brazil has no great interest in resolving a dispute between two foreign ship owners.  For reasons discussed below, the Court finds that this is one of those exceptional cases where public and private interests outweigh the Plaintiff's choice of forum.

---

[4] Defendants also rely the doctrines of international comity and *alibi lis pendens* as grounds for dismissal. The Court does not address those grounds since dismissal is warranted for other reasons.  Initially, Defendants also asserted lack of personal jurisdiction as an alternative grounds for dismissal, but they have since withdrawn that argument.

*Standard of Review*

In *Gilbert*, the Supreme Court explained the reasoning behind the doctrine of *forum non conveniens*:

> The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute.  These statutes are drawn with a necessary generality and usually give a plaintiff a choice of courts so that he may be quite sure of some place in which to pursue his remedy.  But the open door may admit those who seek not simply justice but perhaps justice blended with some harassment.  A plaintiff sometimes is under temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself.

*Id.* at 507.  A defendant seeking dismissal on the basis of *forum non conveniens* bears the burden of establishing that "'(1) an adequate alternative forum is available, (2) the public and private interests weigh in favor of dismissal, and (3) that plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice.'"  *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1330 (11th Cir. 2011) (quoting *Leon v. Million Air, Inc.*, 251 F.3d 1305, 1310-11(11th Cir. 2001)).  Plaintiff's choice of forum is afforded deference, but the amount of deference is weaker "when the plaintiff is a foreigner litigating far from home."  *Leon*, 251 F.3d at 1315.  Moreover, when foreign interests are at stake, the first step in the *forum non conveniens* analysis "is to determine whether United States law should be applied to the case." *Membreno v. Costa Crociere S.p.A*, 425 F.3d 932, 936 (11th Cir. 2005).

*Choice-of-Law:  Brazilian Law Applies*

When determining whether United States law applies in a Jones Act or general maritime case, the Court must consider the following factors:

> (1) the place of the wrongful act; (2) the flag under which the ship sails; (3) the allegiance or domicile of the injured party; (4) the allegiance of the defendant shipowner; (5) the place of the contract between the injured party and the shipowner; (6) the accessibility of a foreign forum; (7) the law of the forum; and (8) the shipowner's base of operations.

*Id.* These factors overwhelming point to application of Brazilian law.[5] The wrongful act occurred in Brazil. Neither vessel is American-flagged. Both shipowners are foreign, with no base of operations in the United States. The accident took place in Brazil which, for reasons discussed immediately below, the Court finds to be an accessible forum.[6]

### *Brazil is an Adequate & Available Alternative Forum*

The adequacy of the alternative forum and the availability of that forum (i.e., that plaintiff can reinstate his case there without undue in convenience or prejudice) are separate concepts. "Available" means that the foreign court can assert jurisdiction over the plaintiff's claim. *Leon*, 251 F.3d at 1311. "Ordinarily, this requirement will be satisfied when the defendant is 'amenable' to process in the other jurisdiction." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n. 22 (1981). Zhenhua points out that judicial proceedings arising from the accident, including its own declaratory action against Kyla, are pending in Brazilian courts. Kyla's response is a *non sequitir*—i.e., that Kyla has, in its defense to the Brazilian declaratory action, "reserved the right to challenge the jurisdiction" of the Brazilian courts. Kyla's statement in the Brazilian pleadings has no bearing on that court's actual ability to exercise jurisdiction.[7]

---

[5] The factors were adopted by the Supreme Court in *Lauritzen v. Larsen*, 345 U.S. 571 (1953), which was a Jones Act action involving an injured seaman. However, the "broad principles of choice of law and the applicable criteria [announced in *Lauritzen*] were intended to guide courts in the application of maritime law generally." *Cliffs-Neddrill Turnkey Internat'l-Oranjestad v. M/T Rich Duke*, 734 F. Supp. 142, 148 (D. Del. 1990) (quoting *Romero v. International Terminal Co.*, 358 U.S. 354, 382 (1959)).

[6] The law of the forum is the only factor that does not weigh against application of United States law, but that factor "is entitled to little weight because 'fortuitous circumstances . . . often determine the forum.'" *Sigalasv. Lido Maritime, Inc.*, 776 F.2d 1512, 1517 (11th Cir. 1985) (quoting *Lauritzen*, 345 U.S. at 590-91)).

[7] Reserving the right to challenge jurisdiction is not, in itself, a challenge to jurisdiction, and it is certainly not evidence that Brazil lacks jurisdiction over Kyla's claims against Zhenhua.

Moreover, since the inquiry is normally focused on the *defendant's* amenability to service, the relevant party is Zhenhua, not Kyla.  Zhenhua has "agree[d] to be bound by and to submit to the jurisdiction of the final judgment of the Brazilian courts, to waive any applicable statutes of limitation therein, to be bound by the letter of undertaking ('LOU") already obtained and accepted by Kyla and to make available to the Brazilian forum all relevant witnesses and documents under their control."  (Def.'s Brf., Doc. 67, 9-10.)  This is sufficient to satisfy the Court that Brazil is an available alternative forum.

Whether Brazil is an adequate forum is the subject of intense debate between the parties. Adequate means "that the alternative forum offers at least some relief."  *Leon*, 251 F.3d at 1311. While there is no dispute that Brazilian law would permit Kyla to recover damages if it should prevail, Kyla argues that the remedy is nonetheless inadequate due to delay in the Brazilian court system.  In *Piper Aircraft*, the Supreme Court noted that "[i]n *rare* circumstances" the  remedy may be so "clearly unsatisfactory" as to render the alternative forum inadequate.  *Piper Aircraft*, 454 U.S. 265 n. 22 (emphasis added).   The Eleventh Circuit has recognized that "'[a]n adequate forum need not be a perfect forum,' and courts have not always required that defendants do much to refute allegations of partiality and inefficiency in the alternative forum."   *Leon*,  251 F.3d at 1311-12 (quoting *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir. 2001)).  Nevertheless,  "*extreme* amounts of partiality or inefficiency may render the alternative forum inadequate."  *Id.* (emphasis added).  A plaintiff cannot rely on unsubstantiated allegations of delay.  *Id.*  Only "where plaintiff produces significant evidence of . . . delay (in years) typically associated with the adjudication of similar claims, and these conditions are so severe as

to call the adequacy of the forum into doubt," does the defendant have "the burden to persuade the District Court that the facts are otherwise."[8] *Id.* at 1312.

Kyla has presented evidence from its Brazilian counsel, Antonio Francisco Sobra Sampaio, regarding the delay in Brazil's court system. Mr. Sampaio states that "it would be surprising if there is a final decision in any action filed against Z[henhua] any sooner than 2022 and it is more likely to take until at least 2024." (Sampaio Decl., Doc. 62-1, ¶ 21.) To support this estimate, Mr. Sampaio first cites two ship collision cases. Neither of those is particularly helpful. He provides the date of the collision giving rise to each case and the dates of the final (or most recent) court action, but there is no indication when the cases were filed.[9] In addition, Mr. Sampaio cites the stages of litigation in Brazilian courts and provides estimates of the time frames for each stage of litigation. These do not align with his overall estimated time frame for resolution of this case. His initial estimate for conclusion of a newly-filed action in Brazil is 10 to 12 years, but the estimated times for the litigation stages add up to 14 to 17 years. In light of the lack of specificity regarding the "similar" cases and the internal inconsistency in the litigation estimates (i.e., 10 to 12 years versus 14 to 17 years), Plaintiff has failed to substantiate its assertion of delay.

Even if Mr. Sampaio's assessment is correct, this delay does not render Brazilian courts inadequate. Delay is rarely the basis for declaring a forum inadequate. *See Tazoe*, 631 F.3d at 331 (rarely is alternative forum so inadequate that it amounts to no remedy). Indeed, the Court is

---

[8] This approach "forbids dismissal to alternative forums that realistically are not capable of producing a remedy for the plaintiff's injuries, without crediting cursory attacks on legal systems simply because they are somewhat slower or less elaborate than ours." *Id.* at 1312-13.

[9] Furthermore, the first case provides little basis for comparison because the decision of the Admiralty Tribunal was not disputed, and the claims were then referred to an arbitrator.

aware of only one case in which a foreign forum was found to be inadequate on the basis of delay alone. In that case, *Bhatnagar v. Surrendra Overseas, Ltd.*, 52 F.3d 1220 (3d Cir. 1995), the Third Circuit upheld that district court's determination that a 25-year delay caused by a backlog in the Indian court system was an "egregious delay" that clearly fell "on the intolerable side" of the line "separating tolerable delay from intolerable." *Id.* at 1228. On the other hand, numerous courts have found Brazil to be an adequate alternative forum for a variety of claims despite arguments of delay. *See In re Air Crash Near Peixoto, De Avezeda Brazil*, 574 F.Supp.2d 272, 284-85 (E.D.N.Y. 2008) (collecting cases). The type of claim asserted also makes this case distinguishable from *Bhatnagar*. In contrast to the personal injury claims asserted in that case, the instant action involves monetary damages sustained by international shipping companies. Furthermore, a lengthier delay is tolerable in this type of action because ship collision/allision cases do not lend themselves the speedy resolution no matter where they are filed.[10] Finally, Kyla's delay argument is considerably weakened by the fact that it chose to do business in Brazil. "There is a substantial temerity to the claim that a country where a party has chosen to transact business . . . is inadequate. . . . '[I]t should be remembered that parties do not enter into civil relations in foreign jurisdictions in reliance upon our courts. They could not complain if our courts refused to meddle in their affairs and remitted them to the place that

---

[10] Based on this Court's informal review of ship collision/allision actions filed in this district over the past 10 years, two to three years is the norm for resolving litigation involving *local* incidents in this district. *See, e.g.*, *Liberty Surplus Ins. Corp. v. Patriot Asphalt, L.L.C.*, 06-00456 (appeal dismissed 2 ½ years after complaint filed); *In re Atlantic Marine*, 06-00100-CG-B (case settled more than 3 years after complaint filed); *In re Cenac Towing*, 04-00625-CB-L (final judgement on appeal approximately 3 years after complaint filed); *In re the Complaint of Arden A. Johnson*, 04-00128-WS-B (case settled after 2 years). The Court would venture an educated guess that an action involving foreign law, foreign witnesses and discovery located in a foreign country (none of which appear to be applicable in the foregoing cases) would require significantly more time.

established and would enforce their rights.'" *Eastman Kodak Co. v. Kavlin*, 978 F. Supp. 1078, (S.D. Fla. 1997) (quoting *Cuba R.R. Co. v. Crosby*, 222 U.S. 473, 480 (1912)).

### *Balancing Private & Public Interest Factors*

In *Gilbert* the Supreme Court identified both private and public factors relevant to the *forum non conveniens* analysis. The private interest factors to consider include "ease of access to sources of proof; availability of compulsory attendance of unwilling, and the cost of obtaining attendance of willing, witnesses. . . and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gilbert*, 330 U.S. at 508. Considerations of public interest include "[a]dministrative difficulties for courts" in which the action is brought, the burden of jury duty on local citizens, "[the] local interest in having localized controversies decided at home," and the problems posed by the application of foreign law. *Gilbert*, 330 U.S. at 508-09.

In this case, one fact overshadows the balancing of private and public interests. This case has no nexus to the United States. This action was filed here only because a different Zhenhua vessel made a fortuitous call at the Port of Mobile. The collision occurred in Brazil. None of the witnesses are here. The parties are foreign corporations whose headquarters are in foreign countries. The ships are foreign-flagged vessels and their crews were foreign nationals. A Brazilian port was damaged in the accident. None of the evidence is located in the United States. Brazilian law applies. In *Compania Naviera Joanna S.A. v. Koninklijke Boskalis Westminster N.V.*, 569 F.3d 189 (4th Cir. 2009), the Fourth Circuit upheld a *forum non conveniens* dismissal under very similar circumstances. After discussing the Supreme Court's decision in *Piper Aircraft*, which upheld dismissal of a case brought by Scottish plaintiffs against a U.S. company arising from an airplane accident in Scotland, the *Compania Naviera* court held:

> In this case, the facts weigh even more clearly in favor of dismissal. The collision occurred in Chinese territorial waters and was investigated by Chinese officials.

>  Both ships were arrested in China in furtherance of damage claims filed there. The parties are foreign corporations-from Panama, Switzerland, and The Netherlands-and neither ship had any American national on board. All of the evidence is located in China or some other foreign jurisdiction. And attempting to secure the attendance of witnesses, procure relevant documents and other evidence, and provide translators for virtually every witness able to attend would administratively tax the court system, as would the effort at applying Chinese law.
>
>  These facts all weigh in favor of affirming the district court's ruling. Indeed none can be found to weigh in favor of trying this case in the United States. . . .

*Id.* at 201.  The same is true in this case.

Kyla makes a valiant effort to support its choice forum.  First, it points to the ease with which the parties can produced documents in their possession.  Some relevant documents may be in the possession of the parties and easily produced in this Court, as Kyla points out, but many documents (as well as other evidence) are in the possession of the Brazilian courts.  Those must be obtained, copied and translated from Portuguese to English.  Kyla also points out that the crewmember witnesses can be brought to the United States as easily they can be brought to Brazil.[11]  But Kyla ignores the existence of Brazilian witnesses.  The cost of their attendance and their amenability to compulsory process in Brazil is certainly a consideration that favors the Defendants.[12]  Kyla's suggestion that this case will pose no administrative difficulties for this

---

[11] Kyla points to an incident involving the M/V ZHEN HUA 24, a sister ship to the M/V ZHEN HUA 27, that it would like to investigate.  Because that incident occurred in Portsmouth, Virginia, Kyla asserts that it would be difficult to obtain evidence regarding that incident, which occurred in Portsmouth, Virginia, if is required to litigate the instant action in Brazil. The tenuous possibility that potential discovery might be located in the United States is not even a feather on Kyla's side of the *forum non conveniens* scale.

[12] Regarding the attendance of witnesses, Kyla argues that the United States is a signatory of the Hague Convention and Brazil is not.  That fact has nothing to do with compulsory attendance.  Perhaps Kyla's point is that the Hague Convention makes it easier to obtain testimony from a foreign witness.  Whatever minimal weight that argument might carry is overcome by the Zhenhua's pledge to make available all witnesses within its control.

Court is overly optimistic. Cases involving foreign parties and witnesses, not to mention substantial amounts of evidence located in a foreign country, are significantly more complex and time-consuming than most cases and require a disproportionate amount of judicial resources. Though Kyla asserts that Brazil has no particular local interest in resolving a case between two foreign shipowners, this case is more complex than a simple collision between two foreign ships. Two terminals at the Brazilian port were damaged in the accident, and apparently Brazilian cargo was lost as well. Litigation arising from this accident already exists in Brazil, and it involves terminal owners, cargo owners and insurance companies in addition to the parties in this case. Brazil does have a substantial interest in adjudicating this action. Finally, Kyla's argument that this Court can apply foreign law holds little sway. A Brazilian court is quite obviously in a better position to interpret and apply Brazilian law.[13]

### *Plaintiff Can Reinstate this Lawsuit in Brazil Without Undue Inconvenience or Prejudice*

There are no impediments to Kyla's ability to bring suit in Brazil. Zhenhua has agreed to waive any statute of limitations defense that might exist and to submit to the jurisdiction of Brazilian courts. Kyla does not contest Zhenhua's assertion that it can file suit in Brazil. Instead, it argues that it would suffer prejudice if it is required to do so. Kyla's assertions of prejudice are unpersuasive.

The first, and primary, argument regarding prejudice is that "Kyla would be required under Brazilian [law] to provide security in the amount of 25% of its claim in the form of a cash

---

[13] In its brief, Kyla creates a rabbit trail regarding applicability of the Brussels Convention, and this Court's ability (or capability) to apply international law. This argument ignores the obvious starting point--whether the Brussels Convention applies is a question of Brazilian law in the first instance. Moreover, when Kyla's argument is read carefully, it is clear that the Brussels Convention, *if applicable*, would apply only to one specific issue, i.e., a shipowner's ability to limit liability.

15

deposit with the court or bank guaranty, since Brazilian courts do not recognize Protection & Indemnity Club letters as valid security absent agreement of by the parties." (Pl.'s Brf., Doc. 62, 18.)  *If* Kyla were required to post security in cash *and* the full 25% was required, a cash deposit of $10 million would be required.  However, the form and amount of security that would be required is far from certain.  Kyla relies on the declaration of its Brazilian counsel, Mr. Sampaio. who states that Kyla would be required under Brazilian law "to provide security in the amount of *up to* 25% of its claim." (Sampaio Decl., Doc. 62-1 ¶ 27 (emphasis added)).  Hence, the amount of the security would be a *maximum* of 25%, but the specific amount that would be required in this case is unknown.  Also, Kyla's evidence shows that a bank guaranty is acceptable alternative to a cash deposit, but the cost of such a guaranty is also unknown.  Moreover, whether a requirement for posting security would prejudice Kyla depends upon Kyla's financial condition, yet another unknown factor.  In sum, the evidence does not support Kyla's claim that the security requirement is prejudicial.

The remainder of Kyla's prejudice arguments are equally unavailing. Kyla contends that the Admiralty Tribunal's findings "warrant further examination and discovery" and that Kyla "should be afforded the benefit of the Federal Rules of Civil Procedure and due process . . . to investigate the facts so that a meaningful determination of liability can be made." (Pl.'s Brf., Doc. 62, 20.)  That argument does not identify any undue prejudice to Kyla.  Kyla's remaining prejudice arguments—substantial delay resulting from a new lawsuit and lack of compulsory process—have already been addressed with regard to other *forum non conveniens* considerations. Suffice it to say that these factors do not rise to the level of undue inconvenience or prejudice.

**Conclusion**

For the reasons discussed above, this action is due to be dismissed based on the doctrine of *forum non conveniens.* This dismissal is, however, conditioned on Defendants' agreement "to be bound by and to submit to the jurisdiction of the final judgment of the Brazilian court(s), to waive any applicable statutes of limitation therein, to be bound by the letter of undertaking ("LOU") already obtained and accepted by Kyla, and to make available to the Brazilian forum all relevant witnesses and documents under their control[.]" (Def.'s Reply Brf., Doc. 67, 9-10.) Accordingly, it is **ORDERED** that the motion to dismiss be and hereby is **GRANTED** upon the conditions set forth above.

**DONE** this the 30th day of April, 2012.

s/*Charles R. Butler, Jr.*
**Senior United States District Judge**